## COMMERCIAL ASSURANCE CO. *v.* RECTOR.

Decided December 12, 1891.

*Agency—Authority—Draft.*

> Authority to a special agent to make a draft on the principal payable " to the order of the court " will not empower him to make it payable to bearer.

APPEAL from *Garland* Circuit Court.

J. B. WOOD, Judge.

*Geo. G. Latta* for appellant.

A party dealing with an agent whose authority is conferred by written instrument is bound to take notice of its legal effect. Wiggs was a special agent, and parties are put on inquiry as to the extent of his authority and are charged with notice of the limitations upon his powers. Wade on Notice, 295, 296; 657, 11 Gratt., 269; 66 Barb., 623; 8 Wend., 494; 29 Ark., 512; 9 Pick., 542; 3 Johns. Chy., 344; 1 Pet., 264; 7 Johns., 390; 3 Hill (N. Y.), 279; 7 B. & C., 278; 48 Vt., 259. The acts of a special agent are valid only as they come within the scope and operation of his authority. 22 How., 75; 1 Pet., 264; 9 Pet., 607.

*G. W. Murphy* for appellee.

In the light of all the circumstances, the jury found that Wiggs had authority to draw and negotiate the draft as he

did.   He was specially empowered to draw this draft and acted within the scope of his authority.   The draft was in proper form, and, being on one of appellant's blank used in the payment of its losses, is binding upon it.   1 Rand., Com. Paper, sec. 138.

HUGHES, J.   The appellee, who was the sole owner and proprietor of the Hot Springs Valley Bank, sued the appellant, an insurance company, upon a draft of which the following is a copy :

"Central Department

*"4139 Commercial Union Assurance Co. (limited).*    [*$750.*]
"HOT SPRINGS, ARK., May 20, 1890.

"At sight, pay to Hecox & Zimmerman, or bearer, seven hundred and fifty dollars, in full of all claim against the Commercial Union Assurance Company (limited), for loss under policy No. 100,060, of Hot Springs agency.
"To Commercial Union Assurance Co. (limited),
"Corner Pine and William streets, N. Y.
"W. W. WIGGS, Agent."

The drawer of the draft, W. W. Wiggs, was the local agent at Hot Springs for the drawee, the appellant.   The draft was presented to Rapley, the cashier of appellee's bank, with a letter from C. J. Holman, secretary of the appellant, and Rapley cashed the draft which was indorsed by Wiggs in blank, who received the proceeds, and by Rapley for collection, and was by him forwarded and presented for payment, which was refused by appellant.   Wiggs, instead of paying the loss on the policy of insurance to Hecox & Zimmerman, with the proceeds of the draft, left Hot Springs soon after negotiating the draft and did not return.

A passage in the letter of Holman to Wiggs, presented to the cashier of the Hot Springs Valley Bank, when he cashed the draft, and which appellee contends conferred authority upon Wiggs to draw the draft, as it was drawn, is in these words: "As you fail to state in your letter into what court the money is to be paid, we think the best way to treat

the matter is for you to make a draft to the order of the court for the benefit of whom it may concern, for the $750 due from us, for which we enclose you draft, and proper receipts, which can be signed by the court," etc. It is contended also by appellee that the appellant had ratified the acts of Wiggs in the drawing and negotiating of the draft.

It appeared from the deposition of Holman that Wiggs had a written or printed commission as agent of the appellant at Hot Springs, which gave him power only " to receive proposals for insurance against loss and damage by fire in Hot Springs and vicinity, and countersign, issue and renew policies of insurance, and to receive premiums in payment of policies issued by him, subject to the rules and regulations of this company, and such instructions, as may from time to time be given by its officers."

This commission and the letter of Holman to Wiggs was all the material evidence as to the authority of Wiggs as agent of the company. There was no evidence of the ratification of Wiggs' acts in drawing and negotiating the draft as he did. The court instructed the jury. A verdict was returned for the appellee. A motion for a new trial was made and overruled, and, saving proper exceptions, the company appealed.

It appears from the evidence that Wiggs was a special agent, whose powers were limited and defined by his commission. " It is the duty of the party dealing with such a one to ascertain the extent of his authority, and if he do not, he must abide the consequences," unless the agent has been held out as possessing a more enlarged authority. *Liddell* v. *Sahline, ante*, p. 627; Story on Agency, secs. 126 and 127.

" A principal is bound by the acts of his agent, within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that, he is liable for the acts of his agent within the appearance of authority which

the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing." *Law* v. *Stokes*, 3 Vroom (N. J.), 249.

The instructions of the circuit court sufficiently declared the law in the case.

For the entire lack of any evidence in the case showing that W. W. Wiggs, the agent of the appellant, had authority to draw and negotiate the draft sued upon, in the manner he did, and the absence of proof of ratification by the appellant of his acts in so doing, the judgment is reversed, and the cause is remanded for a new trial.